Signed and Filed: October 11, 2013



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>PHILIP L. MARIGMEN and<br>RUBYRUTH Q. MARIGMEN,<br>                     Debtors. | Bankruptcy Case<br>No. 08-32022DM<br><br>Chapter 7 |
| ROBERT LUNBECK and<br>KATHLEEN LUNBECK,<br>                     Plaintiffs,<br>v.<br>PHILIP L. MARIGMEN and<br>RUBYRUTH Q. MARIGMEN,<br>                     Defendants. | Adversary Proceeding<br>No. 13-3166DM |

MEMORANDUM DECISION ON COMPLAINT TO
DETERMINE DISCHARGEABILITY OF DEBT

I. INTRODUCTION

    This is a sad case of a home repair project that did not go well for the plaintiffs and was not well handled by the defendant. Eleven years later, the court is asked to determine whether a 2002 small claims court judgment in the principal sum of $2,745 (now with accrued interest and costs originally awarded by the court amounting to over $5,600) is nondischargeable in defendant's

-1-

bankruptcy.

Recognizing that the plaintiffs bear the burden of proof by a preponderance of the evidence, and that there is a presumption of a fresh start in favor of debtors, the court concludes, for the reasons that follow, that defendant's liability on that 2002 judgment is discharged.

II. DISCUSSION[1]

In 1999, plaintiffs Robert Lunbeck and Kathleen Lunbeck hired defendant Philip L. Marigmen ("Marigmen"), a handyman, to do some home repairs at their condominium on Vallejo Street in San Francisco. That job was preformed satisfactorily.

Three years later, when the Lunbecks were preparing to ready their condominium for sale, Mr. Lunbeck contacted Marigmen about doing some more work for him, including fixing electrical problems, minor carpentry, painting, plumbing and similar work, all set forth in Trial Exhibit 4-1.

At the same time, the Lunbecks were moving into a new home on Junipero Serra Boulevard in San Francisco, and Mr. Lunbeck outlined some other tasks that they wanted Marigmen to handle.

Marigmen made a preliminary estimate of the costs to do the work at Vallejo Street but needed to see Junipero Serra Boulevard before giving Mr. Lunbeck an estimate. The parties traded e-mails about how much time the project would take and the need for Marigmen to get underway promptly.

Marigmen met Mrs. Lunbeck on August 22, 2002, to discuss his work. Trial Exhibit 6 shows a series of handwritten invoices

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

given to Mrs. Lunbeck by Marigmen and checks and one cash payment given to Marigmen by Mrs. Lunbeck over the next several days, as follows:

    August 22 - $450 - Deposit for material and labor
    August 24 - $280 - Deposit for material
    August 24 - $150 - Deposit for labor
    August 25 - $300 - Deposit for work at Junipero Serra
    August 27 - $150 - Purpose unknown
    August 30 - $300 - Deposit for labor and materials at Junipero Serra
    August 31 - $350 - Deposit for labor and materials at Junipero Serra
    Date Unknown- $200 - Deposit for materials (cash)
    September 5 - $400 - Deposit for material and earthquake and child proofing
    TOTAL PAID - $2,580

Shortly after August 22, Marigmen began some of the work but most of the specific materials for which deposits were made were never produced. By September 5, when Marigmen was asking for more money, the Lunbecks terminated his services.

They sued him in small claims court on November 6, 2002. Judgment was entered against Marigmen on December 30, 2002, in the sum of $2,745 plus $62 in costs (the "Judgment").[2]

The Marigmens filed Chapter 7 bankruptcy in this court on

---

[2] Marigmen's wife, Rubyruth Q. Marigmen, was not named as a judgment defendant and she had no dealings with the Lunbecks. She is entitled to judgment in her favor in this adversary proceeding without any further discussion.

-3-

October 24, 2008 and they received a discharge on February 2, 2009. At no time during that bankruptcy did either of the Lunbecks have knowledge of the bankruptcy case.

On May 24, 2013, the court received a letter from Mr. Lunbeck describing a motion Marigmen had filed with the San Francisco Small Claims Court to vacate the Judgment because he had received a discharge in 2009. Mr. Lunbeck explained in his letter that the underlying debt had been incurred through fraudulent activity and he had not been listed as a creditor in Marigmen's bankruptcy case. The court treated that letter as the equivalent of a complaint initiating this adversary proceeding (Docket No. 1).

Marigmen responded by letter received by the court on July 3, 2013. He argued first that the complaint was not filed within the ninety day time period provided in his bankruptcy in 2008. Following that was a lengthy denial of Mr. Lunbeck's allegations of fraud. The court treated Marigmen's letter as the equivalent of an answer to the informal complaint in this adversary proceeding (Docket No. 9).

Bankruptcy Code § 523(a)(3)[3] renders nondischargeable a debt to a creditor who is neither listed nor scheduled in time to permit filing an adversary proceeding if the debt is based upon §§ 523(a)(2), (4) or (6) or in any event if there is no time to file a proof of claim.

As noted in Beaty v. Selinger (In re Beaty), 306 F.3d 914, 921-22 (9th Cir. 2002):

---

[3] Unless otherwise indicated, all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

-4-

Section 523(a)(3)(B) provides for the exception from discharge of certain debts—most notably, for purposes of this case, debts involving fraud on the part of the debtor—when those debts were not listed by the debtor in the schedule of creditors. The Bankruptcy Code and Rules treat these debts differently from debts of the same sort that have been properly scheduled. Specifically, § 523(a)(3)(B) creates a nondischargeability action for defrauded creditors who were neither listed nor scheduled and had no notice or actual knowledge of the case in time to permit the timely filing of a proof of claim or a timely request for a determination of dischargeability.

Under In re Beezley, 994 F.2d 1433 (9th Cir. 1993), in a no asset Chapter 7 case (such as Marigmen's) the debts are discharged regardless of the time the creditor learns of the bankruptcy, except to the extent that they fall within the provisions of § 523(a)(3)(A). Because the Lunbecks allege that Marigmen's debt was based upon fraud or embezzlement, and Marigmen's liability, has been fixed by the Judgment, the only issue to be tried in this court is whether §§ 523(a)(2) or (4) render it nondischargeable. The elements of Section 523(a)(2) are well established:

> Section 523(a)(2)(A) of the Bankruptcy Code prohibits the discharge of any enforceable obligation for money, property, services, or credit, to the extent that the money, property, services, or credit were obtained by fraud, false pretenses, or false representations. 11 U.S.C. § 523(a)(2)(A); Cohen, 523 U.S. at 218, 118 S.Ct. 1212. The creditor bears the burden of proving the applicability of § 523(a)(2)(A) by a preponderance of the evidence. Slyman, 234 F.3d at 1085. We have consistently held that making out a claim of non-dischargeability under § 523(a)(2)(A) requires the creditor to demonstrate five elements:
>
> (1) the debtor made ... representations;
>
> (2) that at the time he knew they were false;
>
> (3) that he made them with the intention and purpose of deceiving the creditor;
>
> (4) that the creditor relied on such representations; [and]
>
> (5) that the creditor sustained the alleged loss and

-5-

damage as the proximate result of the misrepresentations having been made.

Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir.1996) (quoting Britton v. Price (In re Britton), 950 F.2d 602, 604 (9th Cir.1991)).

Those elements of fraud under section 523(a)(2)(A) "'mirror the elements of common law fraud' and match those for actual fraud under California law, which requires that the plaintiff show: (1) misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages." Tobin v. Sans Souci Ltd. P'ship ( In re Tobin), 258 B.R. 199, 203 (9th Cir. BAP 2001) (emphasis added), quoting Younie v. Gonya (In re Younie), 211 B.R. 367, 373–74 (9th Cir. BAP 1997), *aff'd*, 163 F.3d 609 (9th Cir.1998) (table decision).

At trial the court heard from Mr. and Mrs. Lunbeck; Marigmen did not testify. From the evidence presented the court finds that Marigmen did not knowingly deceive either of the Lunbecks and thus his debt evidenced by the small claims court judgment should be discharged.

While it is true that the Lunbecks paid for some materials that Marigmen did not ever deliver, and after he was terminated, Marigmen told Mr. Lunbeck that he had not purchased the requested materials, the evidence will not support the finding that at the time of the referenced payments Marigmen did not intend to perform either his promised labor or the acquisition of necessary materials. In fact, he did commence work, albeit work that for

-6-

the most part was unsatisfactory to the Lunbecks.  While the
provision of labor and the purchase of materials are two separate
functions, they are inextricably bound together in this simple
contractual relationship for modest home repairs.  The Lunbecks
have not proven that the promises to purchase the merchandise were
knowingly false when made; to the extent that they contend that
Marigmen did not intend to perform the work, that is belied by the
fact that he indeed did perform some work, even some of which was
somewhat satisfactory despite most of it being unsatisfactory.  In
short, performing work poorly is not the same as fraudulently
inducing payment for it.

Even assuming Mrs. Lunbeck, who had all the face-to-face
dealings with Marigmen, was not knowledgeable in the type of home
repair that she requested, if Marigmen had not performed some of
the work during the period after August 22, she should not have
paid him any more money.  The fact that she did pay him convinces
the court that the work was underway at the two different
locations and the fact that all of the requested materials had not
been produced on site does not mean that Marigmen did not intend
to perform or intend to purchase the materials, or that he
intentionally deceived Mrs. Lunbeck, when he asked for and
received the advances between August 22 and September 5.

The Lunbecks plea for a charge of embezzlement under
§ 524(a)(4) is simply unsupportable since none of the conduct of
Marigmen amounts to embezzlement.  Federal law and not state law
controls the definition of embezzlement for purposes of section
523(a)(4).  <u>First Del. Life Ins. Co. v. Wada (In re Wada)</u>, 210
B.R. 572, 576 (9th Cir. BAP 1997).  Embezzlement is defined as

"the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." Id., quoting Moore v. United States, 160 U.S. 268, 269 (1895)). In the context of an exception to discharge claim, embezzlement requires (1) property rightfully in the possession of a nonowner, (2) a nonowner's appropriation of the property to a use other than which it was entrusted, and (3) circumstances indicating fraud. Transam. Commercial Finance Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir.1991).

Marigmen was not entrusted with any funds that he then converted or misappropriated; in all instances Mrs. Lunbeck voluntarily gave him the funds he received and their case stands or falls solely under § 523(a)(2) as discussed above.

III. CONCLUSION

From the foregoing the court finds as a matter of fact that although certain representations were made by Marigmen, Mrs. Lunbeck relied on them, and the Lunbecks were damaged (as reflected in the Judgment), the critical element of knowing deception is lacking under § 523(a)(2).

From that essential fact, the court concludes that the Judgment should be discharged.

The court is concurrently entering a judgment of dischargeability of the Judgment.

\*\*END OF MEMORANDUM DECISION\*\*

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | Robert Lunbeck |
|   | Kathleen Lunbeck |
| 3 | 150 Junipero Serra Blvd. |
|   | San Francisco, CA 94127 |
| 4 | |
|   | Philip L. Marigmen |
| 5 | Rubyruth Q. Marigmen |
|   | 9 Neptune Street |
| 6 | San Francisco, CA 94124 |

-9-